1

2

3

4

5

6

7

8
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
9
AT TACOMA

10
KENNETH LEON YOUNG,

11
                Plaintiff,

12
     v.

13
CAROLYN W. COLVIN, Acting

14
Commissioner of the Social Security
Administration,

15
                Defendant.

16

CASE NO. 3:16-cv-05569 JRC

ORDER ON PLAINTIFF'S
COMPLAINT

17
     This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

18
Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

19
Magistrate Judge and Consent Form, Dkt. 3; Consent to Proceed Before a United States

20
Magistrate Judge, Dkt. 4). This matter has been fully briefed (*see* Dkt. 9, 10). Plaintiff did

21
not file an optional reply brief.

22
     After considering and reviewing the record, the Court concludes that the ALJ did

23
not commit harmful legal error when evaluating plaintiff's Social Security application.

24

For example, plaintiff's earnings indicate that he engaged in substantial gainful activity ("SGA") during the period of alleged disability. Plaintiff did not meet his burden to demonstrate that he did not engage in SGA after the alleged date of disability onset and did not submit performance appraisals to document his work duties during the relevant period of time to demonstrate that he met an exception. Furthermore, even if the ALJ's finding on this issue is erroneous, the ALJ offered an alternative finding supporting the non-disability determination, rendering any error at this step harmless.

Therefore, this matter is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

BACKGROUND

Plaintiff, KENNETH LEON YOUNG, was born in 1974 and was 35 years old on the alleged date of disability onset of February 22, 2010 (*see* AR. 240-41). Plaintiff has at least a high school education (AR. 40).  Plaintiff served 18 and one-half years in the military before he was med boarded and sent home (AR. 69-70). He performed past relevant work as a combat rifle crew member, but after he suffered a parachute injury in 2010, he was sent to Korea, supervising and setting up trash detail (AR. 40, 58, 63). After three years of working four hour days in two, two-hour shifts in Korea, he was assessed as not being able to continue the trash detail after he suffered another head injury in 2013 (AR. 65, 68-70).

According to the ALJ, plaintiff has at least the severe impairments of "traumatic brain injury; post traumatic stress disorder (PTSD); obstructive sleep apnea; migraine headaches/sinusitis/diplopia; osteoarthritis of the bilateral ankles; osteoarthritis of the lumbar and cervical spines and strain; colitis/diverticulitis/kidney stones/pancreatitis;

orthopedic fractures injuries status post parachute accident; status post hernia (20 CFR 404.1520(c))" (AR. 22).

At the time of the hearing, plaintiff was living with his wife, three children and dependent mother-in-law (AR. 89-90).

<u>PROCEDURAL HISTORY</u>

Plaintiff's application for disability insurance benefits ("DIB") pursuant to 42 U.S.C. § 423 (Title II) of the Social Security Act was denied initially and following reconsideration (*see* AR. 142-54, 156-69). Plaintiff's requested hearing was held before Administrative Law Judge Michael Gilbert ("the ALJ") on May 7, 2015 (*see* AR. 51-140). On February 3, 2016, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* AR. 16-50).

In plaintiff's Opening Brief, plaintiff indicates that he raises the following issues: (1) Did the ALJ err in the evaluation of the plaintiff's mental health conditions; (2) Did the ALJ err in assessing the mental residual functional capacity of the plaintiff; and (3) Did the ALJ err in the Step 5 analysis (*see* Dkt. 9, p. 5). However, these first two issues are not argued in the brief. Instead, plaintiff argues in his brief that the ALJ improperly concluded that plaintiff engaged in substantial gainful activity between February 22, 2010 and December 31, 2013 (*see* Dkt. 9, pp. 7-11), and that the ALJ erred at step five by finding that plaintiff was capable of other work (*id.* at 11-14). Because plaintiff failed to argue these first two issues, the Court has no basis upon which to evaluate them further, and declines to do so. The following addresses the issues that have been substantively addressed in plaintiff's opening brief.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

<u>STANDARD OF REVIEW</u>

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

<u>DISCUSSION</u>

**(1)      Did the ALJ improperly conclude that plaintiff engaged in substantial gainful activity between February 22, 2010 and December 31, 2013?**

The ALJ found that plaintiff engaged in substantial gainful activity between plaintiff's alleged onset date of disability --  February 22, 2010 --  and December 31, 2013 (AR. 21). Plaintiff argues that this finding by the ALJ is improper (*see* Dkt. 9, pp. 7-11). Defendant argues that there is at most harmless error. Plaintiff filed no reply to defendant's response brief.

At step one of the sequential disability evaluation process, the ALJ determines whether or not a claimant engaged in substantial gainful activity ("SGA") during the relevant period of alleged disability. An individual who is engaged in SGA is not disabled. 42 U.S.C. § 423(d) (1) (A); *Andrews v. Shalala*, 53 F.3d 1035, 1040 (9th Cir. 1995); 20 C.F.R. § 416.920(b).  "Substantial work activity" involves "significant physical or mental activities" and may include part-time work and work that pays less or involves fewer responsibilities than previous work.  20 C.F.R. § 416.972(a).  It is the claimant's burden to show that he is not engaged in SGA. *See Bowen v. Yuckert*, 482 U.S. 137, 146

n. 5 (1987); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citation omitted).

Earnings may show that an individual is engaged in SGA. 20 C.F.R. § 416.974(a)(1). An individual earning more than a certain amount each month is presumed to be engaged in SGA. *Katz v. Secretary of Health & Human Services*, 972 F.2d 290, 293 (9th Cir. 1992) (earnings beyond a certain guideline create a rebuttable presumption of SGA) (citing *Keyes v. Sullivan*, 894 F.2d 1053, 1056 (9th Cir. 1990)); 20 C.F.R. §§ 404.1574(b)(2), 416.974(b) (2) (setting forth the monthly guideline). Part-time work that pays less than full-time work still can be SGA. *Katz*, *supra*, 972 F.2d at 292 (citing *Keyes*, *supra,* 894 F.2d at 1056; 20 C.F.R. § 416.972(a)).

However, there are situations in "which SGA-level work may have ended, or may have been reduced to the non—SGA level  .  .  .  ." 1984 SSR LEXIS 17 at *7. According to the relevant Social Security Ruling, "a severely impaired person may have worked under conditions especially arranged to accommodate his or her impairments or may have worked through an unusual job opportunity, such as in a sheltered workshop." *Id.*

As argued by plaintiff, plaintiff's testimony suggests that he may have demonstrated all of the special conditions which can indicate work that has been reduced to the non—SGA level (*see* Dkt. 9, pp. 7-11). However, plaintiff fails to acknowledge that when "considering why work effort ended or was reduced to the non-SGA level, [the Administration] [does] not rely solely on information from the worker," instead, unless impartial supporting evidence is already part of a claimant's file, "confirmation with the employer is required." 1984 SSR LEXIS 17 at *8. Plaintiff only supports with his own

testimony that his work in Korea with the Army after his parachute fall was not SGA (*see* Dkt. 9, pp. 7-11). As noted by defendant, "the ALJ requested performance appraisals to document plaintiff's duties from the alleged onset date to present, however, these documents were not provided and no additional time was requested to provide such documents" (Dkt. 10, p. 5 (citing AR. 19, 21, 133-35)). Also as noted by defendant, these relevant performance appraisals were not "provided as requested despite plaintiff's testimony that such appraisals were done by his superiors and they were available to produce" (*id.* (citing AR. 19, 21-22, 133-34)). Despite requests to proffer additional exhibits, plaintiff's attorney did not submit additional evidence on this issue and did not indicate that any additional records were outstanding (*see id.* (citing AR. 19, 21-22, 133-34, 406-07)).

The ALJ noted in the written decision that plaintiff's "earnings are consistent with substantial gainful activity" (AR. 21 (citing AR. 243-47, 266)). In addition, the ALJ indicated that at plaintiff's administrative hearing, "the undersigned requested copies of the claimant's performance appraisals to document his work duties from the alleged onset date to present," however the "appraisals were not provided and no additional time was requested" (AR. 19). Therefore, as the Administration will not find that "work effort [] [] was reduced to the non-SGA level, [based] solely on information from the worker," the Court concludes that plaintiff has failed to meet his burden to demonstrate that his work effort prior to December 31, 2013 was reduced to the non-SGA level. *See* 1984 SSR LEXIS 17 at *8.

1    Furthermore, defendant argues that even if plaintiff's work during this period of

2   time was not at the SGA level, any error by the ALJ is harmless, as the ALJ made

3   findings "in the alternative for the alleged onset date through the date of this decision"

4   (AR. 22; *see also* Dkt. 10, pp. 6-7). The Court concludes that this argument is persuasive

5   as the ALJ also relied on alternative findings to support the conclusion of non-disability,

6   which will be discussed further below, *see infra,* section 2 (AR. 22). Therefore, even if

7   the ALJ erred by concluding that plaintiff was engaged in SGA, such error would be

8   "'inconsequential to the ultimate nondisability determination.'" *Marsh v. Colvin*, 792

9   F.3d 1170, 1173 (9th Cir. July 10, 2015) (citing *Stout v. Commissioner, Social Security

10  Administration*, 454 F.3d 1050, 1055-56 (9th Cir. 2006) ("ALJ errors in social security

11  are harmless if they are 'inconsequential to the ultimate nondisability determination'").

12  Courts must review cases "'without regard to errors' that do not affect the parties'

13  'substantial rights.'" *Id.* at 1118 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)

14  (quoting 28 U.S.C. § 2111) (codification of the harmless error rule)).

15

16      **(2)    Did the ALJ err in the Step 5 analysis?**

17      Plaintiff presents a generalized assertion that the ALJ erred at step five (*see* Dkt. 9,

18  pp. 11-14). Defendant argues that because plaintiff "fails to explain how the ALJ erred in

19  evaluating the evidence, [] this lack of specificity should relieve this Court of any

20  obligation to review the merits of his claim" (Dkt. 10, pp. 7-8 (citing *Carmickle v. Astrue*,

21  533 F. 3d 1155, 1161 n.2 (9th Cir. 2008)) (other citations omitted). Defendant also argues

22  that plaintiff has not directed the Court to "any credible evidence which would

23  demonstrate more work limitations than those already identified by the ALJ in the

24

residual functional capacity assessment," and argues that plaintiff "failed to provide any analysis of the issue, and presented no law, evidence or citation to the record in support of his position" (*id.* at 8 (citing Dkt. 9, pp. 11-14)). Defendant's arguments have some merit.

As noted by defendant, plaintiff does not challenge the ALJ's analysis of or weight given to any of the medical opinions in the written decision. For example, the ALJ gave significant weight to the opinions of psychological consultants Dr. Matthew Comrie, Psy.D. and Dr. Patricia Kraft, Ph.D., which plaintiff does not challenge (AR. 39). Furthermore, plaintiff does not challenge the ALJ's failure to credit fully plaintiff's allegations and testimony. For example, the ALJ noted various inconsistent statements by plaintiff, such as that plaintiff testified that "he only sporadically participates in dives; however, the record suggests he dives multiple times a week" (AR. 33 (citing AR. 2023 (typical daily activities include "scuba diving, many recreational activities including potential upcoming expedition to Arctic Circle"), 2035 ("goes scuba diving 2-3x per week"); *see also* AR. 2177 ("doing lots of open water dives"))); that despite reporting "pain with long walks, the claimant reported hiking to Camp Muir and hiking with his daughter" (AR. 34 (citing AR. 2177, 2302)); and that despite denying at his administrative hearing that he has taken courses since returning to the states, "in early 2015, the claimant was enrolled in EMT courses and security courses" (AR. 34 (citing AR. 2025); *see also* AR. 407 ("I may have to attempt to lie on applications and attempt to find employment just to get a temporary paycheck to assist us")).

However, plaintiff does provide a few references to the record supporting plaintiff's alleged limitations, and also asserts that the Court should give great weight to the VA disability rating of 100 percent. The Court will discuss briefly plaintiff's implied arguments.

Residual functional capacity ("RFC") is the most a claimant can do despite existing limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. § 404, Subpart P, App. 2 § 200.00(c). The regulations further specify:  "When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis."  20 C.F.R. § 404.1545(b); *see also* 20 C.F.R. § 404.1545(c) (mental abilities).

Plaintiff alleges that he has difficulty with speech, with multiple delays in his speech "as he searches for simple words to express well-known concepts" (Dkt. 9, p. 12). However, the ALJ noted the opinion from examining physician, Dr. Karl Goler, M.D., that plaintiff's "comprehension and expression of spoken and written language was only occasionally impaired and that [plaintiff] retains the ability to communicate complex ideas" (AR. 37 (citing AR. 1573-81); *see also* AR. 1577). The ALJ gave "significant weight" to Dr. Goler's opinion and plaintiff does not challenge this and plaintiff offers no reason as to why the ALJ erred by giving significant weight to Dr. Goler's opinion.

Plaintiff also cites a letter in the record that was written to facilitate plaintiff's return to school with accommodations (*see* Dkt. 9, p. 12 (citing AR. 399)). As noted by

1    plaintiff, this record suggests that plaintiff has a slow processing speed and difficulties

2    acquiring information (*see* AR. 399). However, regarding these alleged limitations, the

3    ALJ noted that Dr. Goler opined that plaintiff's "learning curve, communication skills,

4    and work pace are decreased; however the claimant remained capable of work" (AR. 37).

5    This finding by the ALJ is based on substantial evidence in the record as a whole as Dr.

6    Goler opined that plaintiff's "learning curve and communication skills are decreased and

7    work pace is slower than before but he is capable of work" (AR. 1597). As noted

8    previously, the ALJ gave significant weight to Dr. Goler's opinion and plaintiff offers no

9    reason or argument as to why this was an error.

10        Also supporting the ALJ's finding regarding plaintiff's adequate pace and

11   processing speed, the ALJ noted that plaintiff "admitted he is an adrenaline junkie and

12   loves adventurous outdoor stuff such as paragliding, hiking, and scuba diving" (AR. 33

13   (citing AR. 871)). The ALJ noted that plaintiff's "activities suggest an ability to focus as

14   they require significant safety precautions" (AR. 34). Indeed, it is a logical inference that

15   a significant slowing in processing speed or inability to focus would be deadly while

16   paragliding. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (the ALJ may "draw

17   inferences logically flowing from the evidence") (citing *Beane v. Richardson*, 457 F.2d

18   758 (9th Cir. 1972); *Wade v. Harris*, 509 F. Supp. 19, 20 (N.D. Cal. 1980)). Plaintiff

19   argues that "it is important to remember that [his scuba diving is] done as part of his

20   rehabilitation program as a wounded warrior to help with him with head injury (sic)"

21   (Dkt. 9, p. 13). Regardless as to why he is scuba diving, the ALJ's inference that it

demonstrates that plaintiff's ability to focus and processing speed are not too slow to allow for the performance of simple, routine work tasks is supported by this activity.

Plaintiff argues that at most, the work plaintiff detailed regarding when he returned to active duty in Korea could be described as light, but only because sometimes he had to wear body armor, which he contends happened only on a seldom basis (*see* Dkt. 9, p. 13). Plaintiff "argues that this job represents only sedentary activity" (*id*.). However, as noted previously, RFC is the most a claimant can do despite existing limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. § 404, Subpart P, App. 2 § 200.00(c). Plaintiff appears to acknowledge that the ALJ's RFC finding that plaintiff is capable of light work is appropriate, as he acknowledges that "at most, the work he described could be described as light" (Dkt. 9, p. 13).

It is unclear what argument plaintiff is attempting to make here, as the ALJ did not find that plaintiff was able to perform his past relevant work as a combat rifle crew member (*see* AR 40). In addition, it does not appear that the ALJ was relying on plaintiff's description of his job in Korea when finding that plaintiff was capable of light work, with some restrictions (*see* AR. 25). Instead, in part, the ALJ appears to have been relying on plaintiff's many vigorous activities when concluding that plaintiff was not limited to sedentary work. For example, as noted by the ALJ, plaintiff "reported hiking to Camp Muir and hiking with his daughter" (AR. 34 (citing AR. 2177, 2302)). This supports the ALJ's finding that plaintiff was not limited to sedentary work.

Finally, plaintiff notes the 100 percent disability rating by the U.S. Department of Veterans Affairs ("VA") (*see* Dkt. 9, p. 14). Plaintiff suggests that "the Court should give

great weight to [the VA] decision" (*id.* (citing 20 C.F.R. § 404.1504)). However, the Court notes that is not the job of the Court to give weight to particular decisions or opinions and make a disability determination: that is the job of the ALJ. The job of the Court is to review the decision of the ALJ and determine if it is supported by substantial evidence in the record as a whole and without legal error.

Furthermore, plaintiff does not even acknowledge the reasons provided by the ALJ for the failure to credit fully the rating by the VA. For example, the ALJ found that the Army's and the VA's findings with respect to the severity of plaintiff's impairments rely heavily on his medical board questionnaires, which "rely primarily on the claimant's self-reports of symptoms" (AR. 38 (citation omitted)). The ALJ also found that the questionnaires "are based on limited examination and limited review of the claimant's records" (*id.*). The ALJ noted that plaintiff's "VA disability rating does not provide a function-by-function analysis of the claimant's abilities, as required by our rules and regulations   . . . ." (*id.*). The ALJ also noted that "the medical evaluation board process is designed to determine a service member's fitness for duty and/or whether or not they meet retention standards [and] the fact that a service member does not meet retention standards or is found to be unfit for duty is not necessarily synonymous of disability" (AR. 38-39). Plaintiff provides no argument that these findings by the ALJ are inappropriate, and the Court concludes that the ALJ provided persuasive, specific, and valid reasons supported by the record for failing to credit fully the VA disability rating. *See McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) ("the ALJ may give

less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record") (citation omitted).

CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

**JUDGMENT** should be for defendant and the case should be closed.

Dated this 12th day of January, 2017.

J. Richard Creatura
United States Magistrate Judge